**Hodjatollah TAHAMTANI,
Petitioner–Appellant,**

v.

**Richard B. LANKFORD,
Respondent–Appellee.**

No. 87–8334.

United States Court of Appeals,
Eleventh Circuit.

June 8, 1988.

Herbert Shafer, Atlanta, Ga., for petitioner-appellant.

John Richard Edwards, Fulton County Solicitor's Office, Atlanta, Ga., for respondent-appellee.

Before KRAVITCH, Circuit Judge, HENDERSON *, and HENLEY **, Senior Circuit Judges.

PER CURIAM:

Hodjatollah Tahamtani appeals from a final order entered by the United States District Court for the Northern District of Georgia denying his petition for a writ of habeas corpus. We affirm.

On September 18, 1984, Tahamtani was charged with two counts of simple battery in the State Court of Fulton County, Georgia. Count I alleged that on July 7, 1984, he placed his "hand on Joy Branton's leg" without her consent. Count II alleged that on June 6, 1984, he placed his "hand on Dareen Boyle Shelton's chest area" without her consent. At a subsequent hearing held in the state court, Dr. Darvin Hege, a psychiatrist, testified that Tahamtani suffers from a condition called "toucherism," which involves touching women in inappropriate ways in public with the goal being to obtain sexual favors. At the time of his arrest, Tahamtani, an Iranian, had been in this country for approximately seven years and was employed as a typewriter repairman by his brother, Amir, the president of APA Business Machines, Inc.

Because of Tahamtani's limited facility with the English language, Amir contacted his corporate counsel, John Taylor, on behalf of his brother. Taylor referred the matter to an associate in his law firm, John Schaub. Prior to the trial date, Schaub spoke several times with Amir about his brother's case. Schaub also attempted, unsuccessfully, on more than one occasion to enter into a plea agreement with Christina Craddock, the solicitor assigned to prosecute Tahamtani's case.

On the morning of the day of the trial, March 26, 1985, Tahamtani and his brother met with Schaub in the courthouse cafeteria. During the ensuing conversation, Tahamtani expressed the desire to avoid a jail sentence because he did not want his wife to know about the incidents or the resulting charges. After this conference, Schaub conferred again with Craddock about the possibility of entering a plea of guilty. The two agreed to a non-negotiated plea pursuant to which Craddock would not specifically oppose a request for probation but would, on behalf of the State, make a recommendation for incarceration. At a subsequent hearing in the district court held before the magistrate, Craddock testified that a decision not to oppose probation as an alternative in lieu of incarceration was significant because such a concession was usually "considered" by the sentencing judge. Craddock also indicated to Schaub that, since this was Tahamtani's first offense, she believed that the judge would probate the sentence. Schaub returned to Tahamtani and related to him that the State would not oppose his request for probation and that Craddock believed that he would be given a probated sentence. Schaub then reviewed the plea form with

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Tahamtani in English, although Amir acted as a translator. The plea sheet, which Tahamtani signed, specifically stated that the "State will ask for time" and that he could get up to twelve months in prison.

When court convened, Tahamtani pled guilty to the battery charges. Immediately thereafter, Schaub presented evidence to the judge in support of his request for probation, and Craddock requested incarceration. Contrary to everyone's expectations, the trial judge imposed a fine and sentenced Tahamtani to one year in jail.

Tahamtani filed a motion for a new trial on the grounds of ineffective assistance of counsel, which was denied by the court. This denial was affirmed by the Court of Appeals of Georgia. After exhausting his state remedies, Tahamtani filed this petition for habeas corpus relief in the United States District Court for the Northern District of Georgia. On November 26, 1986, the United States magistrate filed a report and recommendation with the district court recommending denial of the petition. The district judge, apparently disbelieving Craddock's testimony, found that the distinction between the State's request for time and its lack of opposition to the request for probation was "artificial and meaningless" and that, because he agreed to this, Schaub rendered ineffective assistance of counsel in the plea negotiation.[1] Nonetheless, the district judge denied the petition because Tahamtani failed to meet the "prejudice" prong of the test for evaluating claims of ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Although *Strickland* dealt with a claim of ineffective assistance in a capital sentencing proceeding, the same two-part standard has been held to apply to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In the context of a challenge to a guilty plea, the *Hill* court explained that, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. We agree with the conclusion of the district court that Tahamtani did not meet this standard.

Tahamtani argues that this case is analogous to *Betancourt v. Willis*, 814 F.2d 1546 (11th Cir.1987). However, in that case, Betancourt's counsel informed him that he had spoken directly with the trial judge and that the judge himself had agreed to a particular sentence in exchange for a guilty plea. In the instant case, no such representation was made to Tahamtani. All that Schaub told Tahamtani was that both he and Craddock believed that, in all likelihood, the judge would probate his sentence. Unlike *Betancourt*, defense counsel made no promises of probation to Tahamtani.

Prior to pleading guilty, Tahamtani reviewed and signed a plea sheet which specified the various rights that are waived by pleading guilty. This plea sheet set out the potential penalty and clearly stated that the State would ask for a prison sentence. Additionally, the plea sheet indicated that Tahamtani entered into the agreement voluntarily and that he had not been promised a lesser sentence, or anything else for that matter, in exchange for his guilty plea. Tahamtani has never contended that he was innocent of the crimes charged, nor has he offered any potentially meritorious defense. In short, Tahamtani pled guilty on the mere hopeful expectation, possibly rising to the level of an assumption, that he would receive a probated sentence. In light of the fact that he knew that there was a possibility that he could receive the sentence that was imposed, his disappointment with the result is not grounds to set aside the guilty plea.

---

1. Because we agree with the district court that Tahamtani failed to meet the second part of the *Strickland* test, we express no opinion on the district judge's conclusion that Schaub rendered ineffective assistance in the plea negotiation.

The judgment of the district court is AFFIRMED.